UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
LAVELLE TODD                                                   :
                                                           :
                           Plaintiff,                     :
                                                           : **21-cv-05226-CS**
        - against -                                         :
                                                           :
A. COLOMBOS,                                                   :
CORRECTIONAL OFFICER,                                          :
                           Defendant.                     :
-------------------------------------------------------------- X

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

 

LETITIA JAMES
Attorney General of the
State of New York
<u>Attorneys for Defendants</u>
28 Liberty Street
New York, New York 10005
(212) 416- 8659

ANDREW BLANCATO
Assistant Attorney General
<u>Of Counsel</u>

i

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................... iii

PRELIMINARY STATEMENT ...............................................................................................1

STATEMENT OF FACTS .........................................................................................................2

STANDARDS OF REVIEW ......................................................................................................3

ARGUMENT ...............................................................................................................................4

    POINT I    PLAINTIFF'S FIRST AMENDMENT RETALIATION CLAIM FAILS TO INCLUDE NON-CONCLUSORY ALLEGATIONS WHICH DEMONSTRATE A CAUSAL CONNECTION BETWEEN HIS ACTIVITY AND THE ADVERSE ACTION TAKEN AGAINST HIM ………………………………………………………………………….. 4

    POINT II    PLAINTIFF'S FREE EXERCISE CLAIM FAILS BECAUSE BEING KEEPLOCKED IS REASONABLY RELATED TO THE PARAMOUNT PENOLOGICAL INTEREST OF INSTITUTIONAL SECURITY …… 6

    POINT III    DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY…..... 10

    POINT IV    PLAINTIFF HAS NOT SUFFERED A SERIOUS ENOUGH DEPRIVATION TO QUALIFY AS CRUEL AND UNUSUAL PUNISHMENT……………………………………………………………. 12

    POINT V    THE ELEVENTH AMENDMENT BARS OFFICIAL CAPACITY DAMAGES CLAIMS .…………………………………………………… 14

CONCLUSION ……………………………………………………………………………….14

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Ashcroft v. al-Kidd*,
    563 U.S. 731 (2011) ............................................................................................................. 11

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ..................................................................................................... 3, 4, 6

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................................................................. 3

*Booker v. Graham*,
    974 F. 3d 101 (2d Cir. 2020) .............................................................................................. 11

*Cruz v. Beto*,
    405 U.S. 319 (1972) ............................................................................................................. 6

*Dawes v. Walker*,
    239 F.3d 489 (2d Cir. 2001), overruled on other grounds, Swierkiewicz, 534
    U.S. 506 ............................................................................................................................... 5

*Diesel v. Town of Lewisboro*,
    232 F. 3d 92 (2d Cir. 2000) .................................................................................................. 6

*Dolan v. Connolly*,
    794 F.3d 290 (2d Cir. 2015) ................................................................................................ 5

*Dove v. Broome Cty. Corr. Facility*,
    No. 9:10-CV-0002 .............................................................................................................. 12

*Farid v. Smith*,
    850 F.2d 917 (2d Cir. 1988) .............................................................................................. 14

*Ford v. McGinnis*,
    352 F.3d 582 (2d Cir. 2003) ............................................................................................ 7, 8

*Gill v. Riddick*,
    No. CIV. 9:03-CV-1456, 2005 WL 755745 (N.D.N.Y. Mar. 31, 2005) ............................. 13

*Harlow v. Fitzgerald*,
    457 U.S. 800 (1982) ........................................................................................................... 11

*Hayden v. Paterson*,
    594 F.3d 150 (2d Cir. 2010) ................................................................................................ 4

*Johnson v. Paul*,
　No. 17-Civ-3654 (KMK), 2018 WL 2305657 (S.D.N.Y. May 21, 2018) .................................7

*Modlenaar v. Liberatore*,
　No. 07-CV-6012 CJS, 2009 WL 2179661 (W.D.N.Y. July 22, 2009) ..................................13

*O'Lone v. Estate of Shabazz*,
　482 U.S. 342 (1987).......................................................................................................... 7-8

*Palmer v. Richards*,
　364 F.3d 60 (2d Cir. 2004)....................................................................................................13

*Pell v. Procunier*,
　417 U.S. 817 (1974) ........................................................................................................ 6-12

*Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Centers Ret. Plan v.
　Morgan Stanley Inv. Mgmt. Inc.*,
　712 F.3d 705 (2d Cir. 2013)....................................................................................................3

*Perez v. Westchester Cty. Dep't of Corr.*,
　No. 05 CIV. 8120 (RMB), 2007 WL 1288579 (S.D.N.Y. Apr. 30, 2007) .............................13

*Redd v. Wright*,
　597 F.3d 532 (2d Cir. 2010)....................................................................................................8

*Robison v. Via*,
　821 F.2d 913 (2d Cir. 1987)..................................................................................................11

*Salahuddin v. Goord*,
　467 F.3d 263 (2d Cir. 2006).............................................................................................. 7-8

*Scott v. Coughlin*,
　344 F.3d 282 (2d Cir. 2003)....................................................................................................5

*Seminole Tribe of Florida*,
　517 U.S. 44 (1996)................................................................................................................14

*Shabazz v. Coughlin*,
　852 F. 2d 697 (2d Cir. 1988)............................................................................................7, 12

*Sheri Torah, Inc. v. Vill. of S. Blooming Grove*,
　2013 WL 1454953 (S.D.N.Y. Mar. 28, 2013) ........................................................................4

*Smith v. Artus*,
　2010 U.S. Dist. LEXIS 104660 (N.D.N.Y 2010) ...................................................................9

*Thornburgh v. Abbott*,
　490 U.S. 401 (1989)................................................................................................................8

*Turner v. Safley*,
   482 U.S. 78 (1987) .................................................................................................. 7, 8

*Washington v. Afify*,
   968 F. Supp. 2d 532 (W.D.N.Y. 2013) ........................................................................ 9

*Washington v. Gonyea*,
   731 F.3d 143 (2d Cir. 2013) (per curiam) ................................................................... 3

*Wesley v. Kalos*,
   No. 97 CIV. 1598(RWS), 1997 WL 767557 (S.D.N.Y. Dec. 11, 1997) .................... 13

*Westchester Day School v. Village of Mamaroneck*,
   379 F. Supp.2d 550 (S.D.N.Y. 2005) ........................................................................... 7

*Westchester Day School v. Village of Mamaroneck*,
   504 F.3d 338 (2d Cir. 2008) ...................................................................................... 10

## CONSTITUTIONS

First Amendment ................................................................................... 6, 9, 11-14, 17

Eighth Amendment .......................................................................................... 12, 13

ELEVENTH AMENDMENT ...................................................................................... 17

## FEDERAL STATUTES

Religious Land Use and Institutionalized Persons Act ............................................. 3, 7

## STATE REGULATIONS

N.Y. Comp. Codes R. & Regs. tit. 7
   § 304.9(d) (2020) ....................................................................................................... 11

## RULES

Fed. R. Civ. P. 12(b)(1) ................................................................................................ 3

Fed. R. Civ. P. 12(b)(6) ............................................................................................ 3, 4

## MISCELLANEOUS AUTHORITIES

Amen. Compl. ............................................................................................... *Passim*

Compl. ¶ 22 ............................................................................................................. 3, 8

Compl. ¶ 23 ............................................................................................................... 10

https://www.newsweek.com/when-ramadan-2018-muslims-set-begin-holy-month-fasting-925691 ................................................................................................................8

**PRELIMINARY STATEMENT**

Defendant, A. Colombos, ("Defendant" or "Officer Colombos"), a Correction Officer employed by the New York State Department of Corrections and Community Supervision ("DOCCS"), by his attorney, Letitia James, Attorney General of the State of New York, respectfully submits this memorandum of law in support of his motion, pursuant to Rules 12 (b) (1) and (6) of the Federal Rules of Civil Procedure, to dismiss the Amended Complaint ("Amended Complaint" or "Amen. Compl."), filed June 9, 2022 (ECF Doc. No. 027).[1]

Plaintiff Lavelle Todd ("Plaintiff") is an incarcerated individual currently incarcerated at Elmira Correctional Facility but was previously incarcerated at Green Haven Correctional Facility ("Green Haven") at all times relevant to this action. Although Plaintiff does not specify which of his Constitutional rights were violated, Plaintiff generally alleges that Defendant was "retaliated" against when he was keeplocked for several days following a confrontation with Defendant on May 24, 2018 when he was stopped in his facility's messhall and ordered to remove food from his Sahora bag. Plaintiff further claims that he received a misbehavior report from Defendant arising from the incident, which resulted in disciplinary proceedings being brought against him and keeplock confinement, which prevented him from attending group services with the Nation of Islam ("NOI"), in violation of his right to the free exercise of his religion.

Plaintiff's First Amendment Retaliation claim fails to include non-conclusory allegations which demonstrate a causal connection between his activity and the adverse action taken against him. Plaintiff's Free Exercise claim fails because the burden Plaintiff is alleged to have experienced – being keeplocked – is reasonably related to the paramount penological interest of

---

[1] Plaintiff's complaint filed on June 11, 2021 ("Complaint" or "Compl") contains allegations not duplicated in the Amended Complaint. When possible, Defendant will cite to the Amended Complaint but where necessary, Defendant will cite to the paragraphs or page numbers of the Complaint that presumably weren't intended to be omitted from Plaintiff's amended pleading.

1

institutional security and the staffing necessary to maintain institutional security. Moreover, in the absence of a clearly established right permitting incarcerated individuals unfettered access to group prayer, Defendant is entitled to qualified immunity. Lastly, having undergone keeplock confinement for nineteen days, without more, does not rise to the level of cruel and unusual punishment. Consequently, Plaintiff's claims should be dismissed in their entirety.

## STATEMENT OF FACTS

Plaintiff alleges that on May 24, 2018, following Ramadan services, Plaintiff and several unidentified incarcerated individuals went to Green Haven's mess hall to obtain their Ramadan Sahora bags. Amen. Compl. pp. 2 – 3. Upon obtaining the Sahora bags, Plaintiff claims that they were searched by Officer Colombos and several "other unidentified officers". Id., p. 3. Plaintiff further claims that Officer Colombos told Plaintiff only to provide identification, an order with which he complied. Id., p. 7.[2] After the search was completed, Officer Colombos purportedly instructed Plaintiff, and the other unidentified incarcerated individuals, to repack their Sahora bags and to return to their cells. Id., p. 3. Plaintiff then claims he asked Officer Colombos for his ID back, but was told "no, go back to your block." Id., p. 7.

The following morning, Plaintiff claims he was allegedly placed into keeplock and served with a false misbehavior report, apparently authored by Officer Colombos, Id., p. 7. Although the Amended Complaint does not specify the charges levied in the misbeavior report, the original Complaint alleged that Plaintiff was charged with not obeying direct orders, not complying with mess hall policies, attempting to smuggle an item from one part of the facility to another, and engaging in conduct which caused a disturbance for an incident that occurred in the mess hall on

---

[2] References to page numbers will refer to those sequenced by the ECF version rather than those listed physically on the Amended Complaint. Plaintiff is being a provided with a copy of the ECF-paginated version of the Amended Complaint.

May 24, 2019. Complaint at ¶¶ 15-16. On May 27, 2018, Plaintiff alleges that Lt Murphy, a non-party, presided over his disciplinary hearing for the May 24, 2019 misbehavior report. Amen. Compl., p. 7. According to Plaintiff, Lt Murphy dismissed the charges and released plaintiff from keeplock, after a total confinement of 19 days which prevented him from participating in congressional Ramadan services. Id.³ Plaintiff seeks $25,000.00 in compensatory damages and $25,000.00 in punitive damages as relief.⁴ Id. p. 5.

## STANDARDS OF REVIEW

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a plaintiff must plead sufficient facts "to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Courts follow a "two pronged approach" to determine plausibility. Iqbal, 556 U.S. at 678. "First, although a complaint need not include detailed factual allegations, it must provide 'more than an unadorned, the-defendant-unlawfully-harmed-me accusation.'" Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Centers Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc., 712 F.3d 705, 717 (2d Cir. 2013) (quoting Iqbal, 556 U.S. at 678). Conclusory allegations are not entitled to the assumption of truth in a complaint sufficiency analysis. See Iqbal, 556 U.S. at 678-79. Second, "a court should determine whether

---

³ The Original Complaint further alleged that the disciplinary hearing was "adjourned" and plaintiff was released on June 14, 2018 following favorable witness testimony. See Compl., ¶¶ 30 – 31.
⁴ As Plaintiff is not seeking injunctive relief, he cannot bring this action under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). See Washington v. Gonyea, 731 F.3d 143, 144 (2d Cir. 2013) (per curiam) ("RLUIPA does not authorize monetary damages against state officers in their official capacities . . . and does not create a private right of action against state officers in their individual capacities").

3

the 'well-pleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'" Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010) (quoting Iqbal, 556 U.S. at 679).

"The standard for a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction is 'substantively identical' to that governing Rule 12(b)(6), except the plaintiff bears the burden of establishing jurisdiction in a 12(b)(1) motion." Sheri Torah, Inc. v. Vill. of S. Blooming Grove, 2013 WL 1454953, at *5 (S.D.N.Y. Mar. 28, 2013) (citing Aurecchione v. Schoolman Transp. Sys., Inc., 426 F.3d 635, 638 (2d Cir. 2005); Lerner v. Fleet Bank, N.A., 318 F.3d 113, 128 (2d Cir. 2003)).

Plaintiff has filed an Amended Complaint to replace the original Complaint. "It is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect." Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir. 1994) (quoting Int'l Controls Corp. v. Vesco, 556 F.2d 665, 668 (2d Cir. 1977)). However, as Plaintiff is pro se, the Court may consider the allegations of the original Complaint to the extent they "shed light" on and do not contradict the allegations of the superseding Amended Complaint. See Perry v. Mary Ann Liebert, Inc., No. 17-CV-5600 (CS), 2018 WL 2561029, at *4 (S.D.N.Y. June 4, 2018). Here, the Amended Complaint omits details that were alleged in the original Complaint, for example, the details of the misbehavior report that are at the heart of Plaintiff's claims.

## ARGUMENT

### POINT I

**PLAINTIFF'S FIRST AMENDMENT RETALIATION CLAIM FAILS TO INCLUDE NON-CONCLUSORY ALLEGATIONS WHICH DEMONSTRATE A CAUSAL CONNECTION BETWEEN HIS ACTIVITY AND THE ADVERSE ACTION TAKEN AGAINST HIM**

Plaintiff claims that being keeplocked was a form of retaliation. This claim has no merit. Incarcerated individuals asserting retaliation claims have the burden of showing "(1) that the

4

speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." Scott v. Coughlin, 344 F.3d 282, 287 (2d Cir. 2003) (quoting Morales v. Mackalm, 278 F.3d 126, 131 (2d Cir. 2002)).  Further, retaliation claims must be "supported by specific and detailed factual allegations, not stated in wholly conclusory terms." Dolan v. Connolly, 794 F.3d 290, 295 (2d Cir. 2015) (quoting Flaherty v. Coughlin, 713 F.2d 10, 13 (2d Cir. 1983), overruled on other grounds by Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002)).  Consequently, courts must assess the retaliation claims of incarcerated individuals with "skepticism and particular care" because such claims are "easily fabricated." Dawes v. Walker, 239 F.3d 489, 491 (2d Cir. 2001), overruled on other grounds, Swierkiewicz, 534 U.S. 506.

Initially, no retaliation may be inferred from Defendant's inspection of the Sahora bags. Plaintiff does not suggest such a motive and the context makes clear that the inspection arose from the transport of packages containing concealed items from the mess hall to the cells of individuals.

Plaintiff also fails to identify the protected speech or conduct at issue and fails to allege a causal connection between that speech and the adverse action taken against him.  Instead, Plaintiff uses conclusory allegations to infer retaliatory motive by Defendant, alleging that "Defendant had carried out a malicious retaliation act against Plaintiff by putting Plaintiff on keeplock with a false misbehavior report." Amen. Compl., p. 8.  Defendant in this matter was not responsible for issuing Plaintiff's keeplock order, a fact Plaintiff seems to acknowledge after alleging his misbehavior report was delivered by Correction Officer Francois and his disciplinary hearing was conducted by Lieutenant Murphy. See Amen. Compl., pp. 7 – 8.  But even if it were assumed that Defendant was aware that the issuance of a misbehavior report could bring about the penalty of keeplock, and even if it were alleged that Defendant were aware that Plaintiff were coming from congregational

5

services (not alleged), that fails to explain why only Plaintiff were subjected to keeplock confinement. Plaintiff implies the other Muslim congregants who accompanied him from services to the mess hall were ordered to empty their bags by Defendant and they complied with Defendant's orders (see Amen. Compl. p. 7) but mentions only that Plaintiff was asked to give his ID to Defendant. See Id. All the incarcerated individuals present had their Sahora bags inspected, and Plaintiff was not the only one who complained, Id., but only Plaintiff received a misbehavior report. These facts taken together suggest Plaintiff was singled out for unlawful activity for reasons other than the protected conduct of religious worship or any other type of protected conduct. Any other conclusion simply fails to "support the inference 'that the speech played a substantial part in the [adverse] action.'" Diesel v. Town of Lewisboro, 232 F. 3d 92, 107 (2d Cir. 2000) (quoting Ezekwo v. NYC Health & Hospitals Corp., 940 F.2d 775, 780-81 (2d Cir. 1991). In sum, the facts alleged by Plaintiff fail to demonstrate that Defendant would have retaliated against Plaintiff, regardless of whether the misbehavior report was otherwise properly issued. Under Iqbal, 556 U.S. at 681, the factual allegations must be more than merely consistent with an unlawful purpose. That is not the case here.

**POINT II**
**PLAINTIFF'S FREE EXERCISE CLAIM FAILS BECAUSE BEING KEEPLOCKED IS REASONABLY RELATED TO THE PARAMOUNT PENOLOGICAL INTEREST OF INSTITUTIONAL SECURITY**

Plaintiff further claims that he was deprived the free exercise of his Islamic faith as a result of being keeplocked. This claim must also fail because the alleged deprivation experienced by Plaintiff was rationally related to institutional concerns for safety. Incarcerated individuals retain protections afforded by the First Amendment despite being incarcerated, including its directive that no law shall prohibit the free exercise of religion. Pell v. Procunier, 417 U.S. 817, 822 (1974); Cruz v. Beto, 405 U.S. 319 (1972). The question under the Free Exercise Clause of the First

6

Amendment is whether a burden on the exercise of religion is reasonably related to legitimate penological concerns. See O'Lone v. Estate of Shabazz, 482 U.S. 342, 348-50 (1987) (citing Turner v. Safley, 482 U.S. 78 (1987), and other cases). As an initial matter, although the Second Circuit has not squarely held, district courts, including this Court, commonly hold and the Circuit has assumed that "a prisoner must make a threshold showing that the disputed conduct substantially burdened his sincerely held religious beliefs." Johnson v. Paul, No. 17-Civ-3654 (KMK), 2018 WL 2305657, *5 and n. 4 (S.D.N.Y. May 21, 2018) (quoting Washington v. Chaboty, No. 09-CV-9199 (PGG), 2015 WL 1439348, *9 (S.D.N.Y. Mar. 30, 2015), and citing Salahuddin v. Goord, 467 F.3d 263, 274–45 (2d Cir. 2006)).

Plaintiffs bear the burden of initially showing that they have suffered a substantial burden on their exercise of religion, whereupon prison officials have "the relatively limited burden" of "identifying" the pertinent legitimate penal interests. However, the ultimate burden is on plaintiffs to show that the challenged restrictions were "irrational." See Salahuddin, 467 F.3d at 274-75. "[F]or a burden on religion to be substantial, the government regulation must compel action or inaction with respect to a sincerely-held belief; mere inconvenience to the religious institution or adherent is insufficient." Westchester Day School v. Village of Mamaroneck, 379 F. Supp.2d 550, 557 (S.D.N.Y. 2005) (applying substantial burden in context of RLUIPA). The existence of ready alternatives weighs against the existence of a substantial burden. See Westchester Day School v. Village of Mamaroneck, 504 F.3d 338, 349 (2d Cir. 2008) (affirming judgment in case in which 379 F.Supp.2d 550 was an earlier decision). The practice allegedly burdened need not be one mandated, as opposed to motivated, by religion, but whether it is mandated is relevant to the determination of a substantial burden. See Ford v. McGinnis, 352 F.3d 582, 593 (2d Cir. 2003).

7

Even if the burden on religious practice is substantial, the challenged prison policy is constitutional if reasonably related to legitimate penological interests. See Ford, 352 F.3d at 594; see also, Redd v. Wright, 597 F.3d 532, 536 (2d Cir. 2010) ("a generally applicable policy will not be held to violate a plaintiff's right to free exercise of religion if that policy is reasonably related to legitimate penological interests").

> Courts must evaluate four factors in making the reasonableness determination: [1] whether the challenged regulation or official action has a valid, rational connection to a legitimate governmental objective; [2] whether prisoners have alternative means of exercising the burdened right; [3] the impact on guards, inmates, and prison resources of accommodating the right; and [4] the existence of alternative means of facilitating exercise of the right that have only a de minimis adverse effect on valid penological interests.

Salahuddin, 467 F.3d at 274 (footnote omitted) (bracketed numbers added) (citing Turner, 482 U.S. at 90-91). See O'Lone, 482 U.S. at 350-52 (1987) (applying Turner test to inmate Free Exercise Clause). The rational basis test is also applicable to non-I/I's First Amendment rights in prison. See Thornburgh v. Abbott, 490 U.S. 401, 414 (1989). In the instant matter, Plaintiff claims his religious liberty was substantially burdened when he was forced to undergo keeplock confinement beginning on May 25, 2018 for 19 days. See Compl., ¶ 34. Specifically, Plaintiff claims this confinement prevented him from attending group congregational services during Ramadan,[5] thereby rendering his religious exercise "effectively impracticable." See Amen. Compl., p. 9. Assuming that keeplock confinement does prevent congregational attendance and assuming this failure to attend does place a substantial burden on a Muslim's religious liberty, Plaintiff may have satisfied the initial part of his burden under the aforementioned test. However, the penological interest of Defendant and the correctional facility when keeplocking incarcerated

---

[5] Ramadan 2018 began on the evening of May 15, 2018 and ended the evening of June 14, 2018. See https://www.newsweek.com/when-ramadan-2018-muslims-set-begin-holy-month-fasting-925691

8

individual's is for safety and staffing purposes after the recipient of keeplock incarceration has been deemed a heightened security risk.

The facts here closely resemble those in Smith v. Artus, 2010 WL 3910086 (N.D.N.Y 2010) (vacated on separate grounds). In Smith, an incarcerated Muslim was transferred to the Special Housing Unit ("SHU") facility at Upstate Correctional Facility ("Upstate") as a result of being found guilty of a disciplinary infraction. Smith, 2010 at * 9 – 10. While Upstate had congregational services for individuals incarcerated in the general population, those in SHU were not permitted to attend absent special permission, considering it would strain finances and manpower to transport and supervise SHU inmates and potentially increase disruptive behavior by increasing the number of I/Is in the congregational area. Id. at * 65 – 68. Plaintiff in Smith failed to demonstrate that defendants' concerns were irrational, and thereby found dismissed his First Amendment Religious Freedom claims after finding their segregation of SHU inmates to be rationally related to the interests of institutional security and preserving resources and the least restrictive means of serving that interest. Id. at * 70 – 71. See also, Washington v. Afify, 968 F. Supp. 2d 532 (W.D.N.Y. 2013) (granting defendant's motion to dismiss incarcerated plaintiff's religious freedom cause of action after finding "no facts that would materially distinguish this case from Smith").

For the same reasons as decided in Smith and Washington, this Court should dismiss Plaintiff's First Amendment Claim that Defendant substantially burdened his ability to freely practice his religion. Even if Plaintiff were prevented from attending group congregational services during Ramadan, Defendant had a legitimate reason to serve him with a misbehavior report thereby evoking keeplock punishment. Keeplock confinement, like SHU confinement, is intended to secure incarcerated individuals who have committed a particular type of disciplinary

9

infraction and to achieve these heightened security concerns and preserve the resources needed to enforce these security measures, sequestration of those in keeplock is a rational way to achieve these goals. Moreover, Plaintiff does not allege enough about the misbehavior report or the circumstances giving rise to it to permit the inference that Defendant wrote the misbehavior report with the intent of burdening Plaintiff's religious practices or with any other improper purpose.

While Plaintiff does not necessarily intend to plead a First Amendment claim as a result of being initially stopped by Defendant on May 24, 2018, the same rationale compels the conclusion that he fails to plead one. Correction Officers are empowered to stop incarcerated individuals suspected of breaking the rules of a correctional facility, even if these I/Is are at or leaving prayer and are arguably engaged in protected activity. Officer Colombos was attempting to maintain institutional security and order when he stopped Plaintiff just as was when he issued his misbehavior report against Plaintiff which arguably enabled Plaintiff's keeplock confinement. As he was serving the paramount interests of institutional security at all times, Defendant's behavior should be deemed constitutional and Plaintiff's First Amendment cause of action should be dismissed. Moreover, the search of the Sahora bags was the type of inconvenience that does not arise to the level of a substantial burden under the Free Exercise clause, particularly considering that once the searches were completed all the individuals involved, including Plaintiff, were permitted to take their Sahora bags to their cells. See Westchester Day School, 379 F. Supp.2d at 557.

## POINT III

### DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY

Even to the extent that plaintiff alleges substantive claims, Defendant has qualified immunity against them to the extent that Plaintiff seeks damages. Qualified immunity shields

government officials from suits for damages arising from performance of their discretionary functions when, applying an objective standard, "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). "[C]onduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011) (citation and internal quotation marks omitted). The Supreme Court instructs "not to define clearly established law at a high level of generality." Id., 563 U.S. at 742. Qualified immunity is also available if, notwithstanding the clear delineation of the rights, "it was objectively reasonable for [an official] to believe that his acts did not violate those rights." Robison v. Via, 821 F.2d 913, 921 (2d Cir. 1987).

As previously discussed, Defendant was not responsible for issuing Plaintiff's keeplock order, but even assuming that by issuing a misbehavior report Defendant was aware of the possibility Plaintiff would be keeplocked, Defendant still maintains qualified immunity against all claims brought by Plaintiff. Officer Colombos has qualified immunity in the instant matter because he did not violate any clearly established law permitting the observation of congregational services by keeplocked persons. In fact, the law in New York seems to vindicate Officer Colombos by *prohibiting* similarly-situated incarcerated individuals from attending group congregational services at the time of this incident. See N.Y. Comp. Codes R. & Regs. tit. 7, § 304.9(d) (2020) ("Attendance at congregate religious services will not be permitted [for those in SHU]"); see also, Booker v. Graham, 974 F. 3d 101 (2d Cir. 2020) (affirming the District Court's grant of summary judgment to defendants based on qualified immunity as federal law did not clearly establish any right of an individual in SHU to attend group prayer). Even if there was no similar state law for

those in keeplock, the fact it was a state regulation to preclude other incarcerated individuals who had been subjected to discipline (*to wit*: individuals in SHU) speaks to the fact it would be objectively reasonable to keeplock incarcerated individuals culpable of requisite discipline despite their Muslim faith and despite their participation in religious congregational services.  See also, Shabazz v. Coughlin, 852 F. 2d 697 (2d Cir. 1988) (granting qualified immunity to appellant prison officials because the unconstitutionality of prison regulations restricting prayer was not clearly established at the time appellee was disciplined).  For these reasons, Officer Colombos should be granted the protections of qualified immunity and all causes of action should be dismissed against him.

**POINT IV**

**PLAINTIFF HAS NOT SUFFERED A SERIOUS ENOUGH DEPRIVATION TO QUALIFY AS CRUEL AND UNUSUAL PUNISHMENT**

To the extent either Plaintiff's Complaint or Amended Complaint can be read to plead an Eighth Amendment claim, this cause of action should be dismissed because he was not subjected to cruel and unusual punishment. The Eighth Amendment's prohibition of cruel and unusual punishment encompasses punishments that involve the 'unnecessary and wanton infliction of pain' and are incompatible with 'the evolving standards of decency that mark the progress of a maturing society.'" Dove v. Broome Cty. Corr. Facility, No. 9:10-CV-0002 DNH/DEP, 2011 WL 1118452, at *10 (N.D.N.Y. Feb. 17, 2011) (quoting Estelle v. Gamble, 429 U.S. 97, 102, 104 (1976)), report and recommendation adopted, 2011 WL 867072 (N.D.N.Y. Mar. 10, 2011).  An incarcerated individual alleging that a certain prison condition constitutes cruel and unusual punishment must prove both an objective and subjective element, specifically, the incarcerated individual "must show that the deprivation at issue is objectively sufficiently serious such that the plaintiff was denied the minimal civilized measure of life's necessities," and "that the defendant possessed a

sufficiently culpable state of mind associated with the unnecessary and wanton infliction of pain." Gill v. Riddick, No. CIV. 9:03-CV-1456, 2005 WL 755745, at *16 (N.D.N.Y. Mar. 31, 2005) (citing Trammell v. Keane, 338 F.3d 155, 161 (2d Cir.2003)) (internal quotation marks omitted).

In the instant matter, this standard is not met. Plaintiff does not explain how the limitations on his religious attendance of Congregational Services were objectively so serious that he was denied a minimum level of life's necessities, nor do the allegations regarding his initial stop by Officer Colombos suggest facts indicative of excessive force. Whatever the analysis under the First Amendment, the denial of religious services, like religious meals, cannot, in itself, state an Eighth Amendment claim. See, e.g., Modlenaar v. Liberatore, No. 07-CV-6012 CJS, 2009 WL 2179661, at *5 (W.D.N.Y. July 22, 2009) ("[D]enial of kosher meals does not violate the Eighth Amendment"); Perez v. Westchester Cty. Dep't of Corr., No. 05 CIV. 8120 (RMB), 2007 WL 1288579, at *5 (S.D.N.Y. Apr. 30, 2007) (denial of halal meal did not constitute Eighth Amendment violation); Wesley v. Kalos, No. 97 CIV. 1598(RWS), 1997 WL 767557 at *4 (S.D.N.Y. Dec. 11, 1997) (denial of Halal food to Muslim inmate did not "rise to the level necessary to be deemed cruel and unusual under the Eighth Amendment"). Moreover, Officer Colombos is not alleged to have been aware of any conditions which posed a hardship on Plaintiff or responsible for them and, in any event, the Second Circuit has cautioned that extremely short confinements, such as the one alleged here (i.e. a confinement under 30 days), typically does not implicate any liberty interest. See Palmer v. Richards, 364 F.3d 60, 64 (2d Cir. 2004). Because the denial of attendance at congregational services does not deny Plaintiff the minimum measure of life's necessities, this cause of action should be dismissed pursuant to rule 12(b)(6).

## POINT V

### THE ELEVENTH AMENDMENT BARS OFFICIAL CAPACITY DAMAGES CLAIMS

Plaintiff's claims for damages against the Defendants in their official capacity, to the extent pled, are barred by the Eleventh Amendment.  See Seminole Tribe of Florida, 517 U.S. 44 (1996); Farid v. Smith, 850 F.2d 917, 921 (2d Cir. 1988).  Finally, to the extent that Plaintiff purports to raise claims under New York state law, Defendants are immune from such claims alleged against them within the scope of their employment, see N.Y. Correction Law § 24, here writing a misbehavior report as alleged.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests the Court grant their Motion to in its entirety and dismiss the Amended Complaint and the action.

Dated: New York, New York
       July 12, 2022

                  LETITIA JAMES
                  Attorney General of the
                  State of New York
                  Attorneys for Defendants
                  By:

                    /s/ Andrew Blancato
                  Andrew Blancato
                  Assistant Attorney General
                  28 Liberty Street
                  New York, New York 10005
                  (212) 416- 8659
                  Andrew.Blancato@ag.ny.gov